# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ANGELIKA ANDERSEN,<br><br>        Plaintiff,<br><br>   v.<br><br><br>QEP RESOURCES, INC., JEFFREY L. BERENSON, JAMES E. CRADDOCK, BARBARA J. DUGANIER, THOMAS J. EDELMAN, HOLLI C. LADHANI, DAVID L. STOVER, SCOTT D. URBAN, WILLIAM T. VAN KLEEF, and MARTHA B. WYRSCH,<br><br>        Defendants. | Civil Action No.<br><br>**COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**<br><br><u>**JURY TRIAL DEMANDED**</u> |

Plaintiff Angelika Andersen ("Plaintiff") by and through her undersigned attorneys, brings this action on behalf of herself, and alleges the following based upon personal knowledge as to those allegations concerning Plaintiff and, as to all other matters, upon the investigation of counsel, which includes, without limitation: (a) review and analysis of public filings made by QEP Resources, Inc. ("QEP" or the "Company") and other related parties and non-parties with the United States Securities and Exchange Commission ("SEC"); (b) review and analysis of press releases and other publications disseminated by certain of the Defendants (defined below) and other related non-parties; (c) review of news articles, shareholder communications, and postings on the Company's website concerning the Company's public statements; and (d) review of other publicly available information concerning QEP and the Defendants.

## SUMMARY OF THE ACTION

1. This is an action brought by Plaintiff against QEP and the Company's Board of Directors (the "Board" or the "Individual Defendants") for their violations of Section 14(a) and 20(a) of the Securities Exchange Act of 1934, 15.U.S.C. §§ 78n(a), 78t(a), and SEC Rule 14a-9, 17 C.F.R. 240.14a-9, in connection with the proposed sale of the Company to Diamondback Energy, Inc. ("Parent") and Bohemia Merger Sub Inc. ("Merger Sub," and together with Parent, "Diamondback") (the "Proposed Transaction").

2. On December 20, 2020, the Company entered into an Agreement and Plan of Merger (the "Merger Agreement") with Diamondback. Pursuant to the terms of the Merger Agreement the Company's shareholders will receive 0.05 of a share of Parent common stock per share of QEP common stock owned (the "Merger Consideration").

3. On February 3, 2021, in order to convince the Company's shareholders to vote in favor of the Proposed Transaction, the Board authorized the filing of a materially incomplete and misleading registration statement with the SEC on Form S-4/A (the "Registration Statement"), in violation of Sections 14(a) and 20(a) of the Exchange Act.

4. For these reasons, and as set forth in detail herein, Plaintiff asserts claims against QEP and the Board for violations of Sections 14(a) and 20(a) of the Exchange Act and Rule 14a-9. Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction unless and until the material information discussed below is disclosed to QEP shareholders before the vote on the Proposed Transaction or, in the event the Proposed Transaction is consummated, recover damages resulting from the Defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

5. This Court has subject matter jurisdiction over all claims asserted herein pursuant to Section 27 of the Exchange Act, 15 U.S.C § 78aa, and 28 U.S.C. § 1331, as Plaintiff alleges violations of Sections 14(a) and 20(a) of the Exchange Act.

6. This Court has personal jurisdiction over all of the Defendants because each is either a corporation that conducts business in, solicits shareholders in, and/or maintains operations within, this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7. Venue is proper under 28 U.S.C. § 1391 because a substantial portion of the transactions and wrongs complained of herein occurred in this District.

## THE PARTIES

8. Plaintiff is, and has been at all times relevant hereto, the owner of QEP shares.

9. Defendant QEP is incorporated under the laws of Delaware and has its principal executive offices located at 1050 17th Street, Suite 800, Denver, Colorado 80265. The Company's common stock trades on the New York Stock Exchange under the symbol "QEP."

10. Defendant Timothy J. Cutt ("Cutt") is and has been the President, Chief Executive Officer, and a director of QEP at all times during the relevant time period.

11. Defendant Phillips S. Baker, Jr. ("Baker") is and has been a director of QEP at all times during the relevant time period.

12. Defendant Julie A. Dill ("Dill") is and has been a director of QEP at all times during the relevant time period.

13. Defendant Joseph N. Jaggers ("Jaggers") is and has been a director of QEP at all times during the relevant time period.

14. Defendant Michael J. Minarovic ("Minarovic") is and has been a director of QEP at all times during the relevant time period.

15. Defendant Mary Shafer-Malicki ("Shafer-Malicki") is and has been a director of QEP at all times during the relevant time period.

16. Defendant Barth E. Whitham ("Whitham") is and has been a director of QEP at all times during the relevant time period.

17. Defendants Cutt, Baker, Dill, Jaggers, Minarovic, Shafer-Malicki, and Whitham are collectively referred to herein as the "Individual Defendants."

18. The Individual Defendants, along with Defendant QEP, are collectively referred to herein as "Defendants."

**SUBSTANTIVE ALLEGATIONS**

**Background of the Company**

19. QEP is an independent crude oil and natural gas exploration and production company with operations in two regions of the United States: the Southern Region (primarily in Texas) and the Northern Region (primarily in North Dakota).

**The Company Announces the Proposed Transaction**

20. On December 21, 2020, the Company jointly issued a press release announcing the Proposed Transaction. The press release stated in part:

> MIDLAND, Texas, Dec. 21, 2020 (GLOBE NEWSWIRE) -- Diamondback Energy, Inc. (NASDAQ: FANG) ("Diamondback" or the "Company") and QEP Resources (NYSE: QEP) ("QEP") today announced that they have entered into a definitive agreement under which Diamondback will acquire QEP in an all-stock transaction valued at approximately $2.2 billion, including QEP's net debt of $1.6 billion as of September 30, 2020. The

consideration will consist of 0.05 shares of Diamondback common stock for each share of QEP common stock, representing an implied value to each QEP stockholder of $2.29 per share based on the closing price of Diamondback common stock on December 18, 2020. The transaction was unanimously approved by the Board of Directors of each company.

**TRANSACTION HIGHLIGHTS:**

- Adds material Tier-1 Midland Basin inventory that competes for capital immediately in Diamondback's portfolio
- Accretive on all relevant 2021 per share metrics including cash flow per share, free cash flow per share and leverage, before accounting for synergies
- Lowers 2021 reinvestment ratio and enhances ability to generate free cash flow, de-lever and return capital to stockholders
- Significant, tangible annual synergies of at least $60 - $80 million comprised of:
  - G&A savings
  - Cost of capital and interest expense savings
  - Improved capital efficiency from high-graded development
  - Physical adjacencies to increase lateral lengths
  - Significant adjacent Permian midstream assets
- Diamondback is expected to maintain its Investment Grade status
- Significant majority of Diamondback's capital will now be allocated to the Northern Midland Basin

**QEP HIGHLIGHTS:**

- Approximately 49,000 net acres in the Midland Basin primarily held by production allowing for capital efficient development
- Q3 2020 average production of 48.3 MBO/d (76.7 MBOE/d); Q3 2020 average Permian production of 30.5 MBO/d (47.6 MBOE/d)
- 48 current drilled but uncompleted wells ("DUCs"); DUC balance expected to be worked down along with Diamondback's DUC balance in 2021, lowering 2021 reinvestment ratio
- QEP's Williston assets will be considered non-core and will be used to harvest cash flow or they will be divested, pending market conditions, with potential sale proceeds to be used towards debt reduction
- Significant adjacent Permian midstream infrastructure
- The pending QEP acquisition, together with the previously announced pending acquisition of assets from Guidon Operating LLC ("Guidon"), will bring Diamondback's total leasehold interests to over 276,000 net surface acres in the Midland Basin (429,000 Midland and Delaware Basin net acres)

"The acquisition of QEP also checks every box of Diamondback's corporate development strategy. The business combination with QEP and the Guidon transaction are accretive on all relevant 2021 financial metrics including free cash flow per share, cash flow per share and leverage, even before accounting for synergies. Most importantly, the addition of this Tier-1 resource competes for capital right away in Diamondback's current portfolio, and we will now be able to allocate most of our capital to the high-returning Midland Basin for the foreseeable future. Pro forma for these transactions, Diamondback is also expected to maintain its Investment Grade status, ensuring access to capital. As stated in past public commentary, Diamondback does not need to participate in industry consolidation to simply get bigger. We participate in corporate development opportunities that we firmly believe will increase the long-term value of our stockholders' investment," stated Travis Stice, Chief Executive Officer of Diamondback.

Mr. Stice continued, "Diamondback's expectations for capital allocation in 2021 remain unchanged: we are expecting to hold pro forma fourth quarter 2020 oil production flat through 2021 in the most capital efficient manner possible, which has improved with today's announcements. Our differentiated cost structure, combined with the addition of this top quartile resource, will allow Diamondback to consistently generate free cash flow and grow our return of capital program to our stockholders."

Tim Cutt, President and Chief Executive Officer of QEP, stated, "We believe that this strategic merger with Diamondback, along with the addition of the Guidon assets, provides our shareholders with an exciting investment opportunity, now and in the future. The large contiguous Tier-1 acreage position in the Northern Midland Basin is expected to lead to operational synergies and deliver capital efficiencies beyond what each company could achieve independently. I believe in this combination and look forward to being a long-term shareholder and watching the value of the company grow with time."

Mr. Cutt continued, "I also want to take this opportunity to recognize QEP's employees and publicly thank them for their dedication and hard work in driving QEP's success. Their tireless efforts over the past several years led to a culture of peer leading operational excellence, safety and efficiency."

**TRANSACTION DETAILS**

Under the terms of the definitive merger agreement, stockholders of QEP will receive 0.05 shares of Diamondback common stock in exchange for each share of QEP common stock, representing an implied value to each QEP stockholder of $2.29 per share based on the closing price of

Diamondback common stock on December 18, 2020. Upon closing the transaction and excluding the impact of shares to be issued in the previously announced acquisition of assets from Guidon, Diamondback stockholders will own approximately 92.8% of the combined company, and QEP stockholders will own approximately 7.2%.

Diamondback remains committed to conservative financial management and is expected to maintain its Investment Grade credit ratings pro forma for the transaction.

The transaction has been unanimously approved by the Boards of Directors of Diamondback and QEP and is expected to be completed in the first quarter or early in the second quarter of 2021, subject to the approval of QEP stockholders, the satisfaction of certain regulatory approvals and other customary closing conditions.

Upon closing, Diamondback's Board of Directors and executive team will remain unchanged. Additionally, the Company will continue to be headquartered in Midland, Texas.

**ADVISORS**

Goldman Sachs & Co. LLC is serving as lead financial advisor to Diamondback, with Moelis & Company also serving as financial advisor to Diamondback. Akin Gump Strauss Hauer & Feld LLP and Gibson, Dunn & Crutcher LLP are serving as legal advisors to Diamondback. Evercore and Latham & Watkins LLP are serving as exclusive financial advisor and legal advisor to QEP, respectively.

### FALSE AND MISLEADING STATEMENTS
### AND/OR MATERIAL OMISSIONS IN THE REGISTRATION STATEMENT

21. On February 3, 2021, the Company authorized the filing of the Registration Statement with the SEC. The Registration Statement recommends that the Company's shareholders vote in favor of the Proposed Transaction.

22. Defendants were obligated to carefully review the Registration Statement prior to its filing with the SEC and dissemination to the Company's shareholders to ensure that it did not contain any material misrepresentations or omissions. However, the Registration Statement misrepresents and/or omits material information that is necessary for the Company's

shareholders to make informed decisions regarding whether to vote in favor of the Proposed Transaction, in violation of Sections 14(a) and 20(a) of the Exchange Act.

**Material False and Misleading Statements or Material
Misrepresentations or Omissions Regarding the Company's Financial Projections**

23. The Registration Statement contains projections prepared by the Company's and Diamondback's management concerning the Proposed Transaction, but fails to provide material information concerning such.

24. The SEC has repeatedly emphasized that disclosure of non-GAAP projections can be inherently misleading, and has therefore heightened its scrutiny of the use of such projections.[1] Indeed, on May 17, 2016, the SEC's Division of Corporation Finance released new and updated Compliance and Disclosure Interpretations ("C&DIs") on the use of non-GAAP financial measures that demonstrate the SEC's tightening policy.[2] One of the new C&DIs regarding forward-looking information, such as financial projections, explicitly requires companies to provide any reconciling metrics that are available without unreasonable efforts.

25. In order to make management's projections included in the Registration Statement materially complete and not misleading, Defendants must provide a reconciliation table of the non-GAAP measures to the most comparable GAAP measures.

---

[1] *See, e.g.*, Nicolas Grabar and Sandra Flow, Non-GAAP Financial Measures: The SEC's Evolving Views, Harvard Law School Forum on Corporate Governance and Financial Regulation (June 24, 2016), *available at* https://corpgov.law.harvard.edu/2016/06/24/non-gaap-financial-measuresthesecs evolving-views/; Gretchen Morgenson, Fantasy Math Is Helping Companies Spin Losses Into Profits, N.Y. Times, Apr. 22, 2016, available at http://www.nytimes.com/2016/04/24/business/fantasy-mathis-helping-companies-spin-ossesinto-profits.html?_r=0.

[2] Non-GAAP Financial Measures, Compliance & Disclosure Interpretations, U.S. SECURITIES AND EXCHANGE COMMISSION (May 17, 2017), *available at* https://www.sec.gov/divisions/corpfin/guidance/nongaapinterp.htm.

26. Specifically, with respect to the Company's projections, the Company must disclose the line item projections for the financial metrics that were used to calculate the non-GAAP measures, including: (i) Adjusted EBITDA; (ii) Free Cash Flow; and (iii) Net Debt/Adjusted EBITDA.

27. With respect to Diamondback's projections, the Company must disclose the line item projections for the financial metrics that were used to calculate the non-GAAP measures, including: (i) Adjusted EBITDA; (ii) Free Cash Flow; and (iii) Net Debt/Adjusted EBITDA.

28. Disclosure of the above information is vital to provide investors with the complete mix of information necessary to make an informed decision when voting on the Proposed Transaction. Specifically, the above information would provide shareholders with a better understanding of the analyses performed by the Company's financial advisor in support of its opinion.

**Material False and Misleading Statements or Material
Misrepresentations or Omissions Regarding Evercore's Financial Opinion**

29. The Registration Statement contains the financial analyses and opinion of Evercore Group L.L.C. ("Evercore") concerning the Proposed Transaction, but fails to provide material information concerning such.

30. With respect to Evercore's *Net Asset Value Analysis for QEP on a Standalone Basis*, the Registration Statement fails to disclose: (i) the cash flows used in the analysis and all underlying line items; (ii) the inputs and assumptions underlying Evercore's use of the discount rates ranging from 8% to 35%; (iii) the range of total reserve value under each of the QEP Management Plan Pricing and the NYMEX Strip Pricing scenarios; (iv) the values of the future estimated effects of QEP's hedging, general and administrative expenses, cash taxes, and net

9

debt used in Evercore's analysis; and (v) the number of fully diluted outstanding shares of QEP common stock.

31. With respect to Evercore's *Discounted Cash Flow Analysis for QEP on a Standalone Basis*, the Registration Statement fails to disclose: (i) the unlevered free cash flows used in the analysis and all underlying line items; (ii) the terminal values; (iii) the inputs and assumptions underlying Evercore's use of the perpetuity growth rates of 2.0% to 3.0%; (iv) the inputs and assumptions underlying Evercore's use of the discount rates ranging from 11.0% to 13.0%; (v) the basis for Evercore's use of the multiples ranging from 3.5x to 4.5x; (vi) the net debt used in Evercore's analysis; and (vii) the number of fully diluted outstanding shares of QEP common stock.

32. With respect to Evercore's *Analysts' Price Targets* analyses, the Registration Statement fails to disclose the price targets observed in the analyses as well as the sources thereof.

33. With respect to Evercore's *Discounted Cash Flow Analysis for Diamondback on a Standalone Basis*, the Registration Statement fails to disclose: (i) the unlevered free cash flows used in the analysis and all underlying line items; (ii) the terminal values; (iii) the inputs and assumptions underlying Evercore's use of the perpetuity growth rates of 2.0% to 3.0% and the discount rates ranging from 11.0% to 9.0%; (iv) the basis for Evercore's use of the multiples ranging from 5.5x to 7.5x; (v) the net debt used in Evercore's analysis; and (vi) the number of fully diluted outstanding of Diamondback common stock.

34. Lastly, the Registration Statement fails to disclose the amount of compensation Evercore will receive in connection with its work for the Proposed Transaction, as well as the timing and nature of past services provided to the parties to the Merger Agreement.

35. When a banker's endorsement of the fairness of a transaction is touted to shareholders, the valuation methods used to arrive at that opinion as well as the key inputs and range of ultimate values generated by those analyses must also be fairly disclosed. Moreover, the disclosure of projected financial information is material because it provides shareholders with a basis to project the future financial performance of a company and allows shareholders to better understand the financial analyses performed by the Company's financial advisor in support of its fairness opinion.

36. Without the above described information, the Company's shareholders are unable to cast a fully informed vote on the Proposed Transactions. Accordingly, in order to provide shareholders with a complete mix of information, the omitted information described above should be disclosed.

**Material False and Misleading Statements or Material**
**<u>Misrepresentations or Omissions Regarding the Sales Process</u>**

37. The Registration Statement contains information concerning the sales process leading up to the Proposed Transaction, but fails to disclose material information concerning such.

38. Specifically, the Registration Statement fails to disclose whether the Company entered into any confidentiality agreements that contained standstill and/or "don't ask, don't waive" provisions with any third parties potentially interested in an acquisition of the Company.

39. Without the above described information, the Company's shareholders are unable to cast a fully informed vote on the Proposed Transactions. Accordingly, in order to provide shareholders with a complete mix of information, the omitted information described above should be disclosed.

# COUNT I

**(Against All Defendants for Violations of Section 14(a)
of the Exchange Act and Rule 14a-9 Promulgated Thereunder)**

40. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

41. Section 14(a)(1) of the Exchange Act makes it "unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 78l of this title." 15 U.S.C. § 78n(a)(1).

42. Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that communications with stockholders in a recommendation statement shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

43. Defendants have issued the Registration Statement with the intention of soliciting shareholders support for the Proposed Transaction. Each of the Defendants reviewed and authorized the dissemination of the Registration Statement, which fails to provide critical information regarding, among other things, the financial projections for the Company.

44. In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading. Each of the Defendants, by virtue

of their roles as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a). The Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Registration Statement, but nonetheless failed to obtain and disclose such information to shareholders although they could have done so without extraordinary effort.

45. The Defendants knew or were negligent in not knowing that the Registration Statement is materially misleading and omits material facts that are necessary to render it not misleading. The Defendants undoubtedly reviewed and relied upon the omitted information identified above in connection with their decision to approve and recommend the Proposed Transaction.

46. The Defendants knew or were negligent in not knowing that the material information identified above has been omitted from the Registration Statement, rendering the sections of the Registration Statement identified above to be materially incomplete and misleading. Indeed, the Defendants were required to be particularly attentive to the procedures followed in preparing the Registration Statement and review it carefully before it was disseminated, to corroborate that there are no material misstatements or omissions.

47. The Defendants were, at the very least, negligent in preparing and reviewing the Registration Statement. The preparation of a Registration Statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence. The Defendants were negligent in choosing to omit material information from the Registration Statement or failing to notice the material omissions in the Registration Statement upon reviewing it, which they were required to do carefully as the Company's directors. Indeed, the Defendants were intricately involved in the process leading up to the signing of the Merger

Agreement and the preparation of the Company's financial projections.

48. The misrepresentations and omissions in the Registration Statement are material to Plaintiff, who will be deprived of his right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Transaction.

49. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT II

### (Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act)

50. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

51. The Individual Defendants acted as controlling persons of QEP within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers and/or directors of QEP, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Registration Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

52. Each of the Individual Defendants was provided with, or had unlimited access to, copies of the Registration Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

53. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same. The Registration Statement at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction. They were thus directly involved in preparing this document.

54. In addition, as set forth in the Registration Statement sets forth at length and described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement. The Registration Statement purports to describe the various issues and information that the Individual Defendants reviewed and considered. The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

55. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

56. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9 by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

57. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A. Preliminarily and permanently enjoining Defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction;

B. Directing the Individual Defendants to disseminate an Amendment to the Registration Statement that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

C. Directing Defendants to account to Plaintiff for all damages sustained because of the wrongs complained of herein;

D. Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

E. Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

Dated: February 4, 2020                    Respectfully submitted,

By: */s/ Joshua M. Lifshitz*
Joshua M. Lifshitz
Email: jml@jlclasslaw.com
**LIFSHITZ LAW FIRM, P.C.**
1190 Broadway
Hewlett, New York 11557
Telephone: (516) 493-9780
Facsimile: (516) 280-7376

*Attorneys for Plaintiff*